IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

(1) WINN & ASSOCIATES, PLLC, )
An Oklahoma Professional Limited )
Liability Company, )
      Plaintiff, )
v. ) Case No. 13-CV-00427-JHP
)
(1) EMCARE PHYSICIAN )
PROVIDERS, INC., )
A Missouri Corporation, )
)
(2) EMCARE PHYSICIAN )
SERVICES, INC., )
A Delaware Corporation, )
)
(3) EMCARE, INC., )
A Delaware Corporation, )
)
(4) EMCARE HOLDINGS, INC. )
A Delaware Corporation, )
)
(5) ENVISION HEALTHCARE )
HOLDINGS, INC. )
A Delaware Corporation, )
      Defendants. )

## ORDER AND OPINION

Now before the Court is Plaintiff's Motion for Summary Judgment and Brief in Support (Doc. 55). Plaintiff has moved for summary judgment on its breach of contract claim against Defendants EmCare Physician Providers, Inc., EmCare Physician Services, Inc., EmCare, Inc., EmCare Holdings, Inc., and Envision Healthcare Holdings, Inc.

I.  FACTUAL BACKGROUND

Plaintiff Winn & Associates, PLLC, is owned and operated by Dr. Berry E. Winn, M.D. It is in the business of providing physician staffing services to local emergency rooms. In the past, Plaintiff provided physicians to staff Muskogee Regional Medical Center's Emergency

Department by directly contracting with Muskogee Regional Medical Center ("Muskogee ER"). Over time, Plaintiff had assembled a highly-talented team of doctors for this purpose. Plaintiff has stated that it typically spends approximately $50,000 in the recruitment and training of a qualified physician, and that is typical for Plaintiff to pay a recruiter $35,000.

On or about April 20, 2012, EmCare Physician Providers, Inc., ("EmCare") contracted with Muskogee Regional Medical Center to staff the Muskogee ER. EmCare, in turn, entered into a Professional Practitioner Services Agreement ("Agreement") with Plaintiff, whereby Plaintiff agreed to provide EmCare with physicians from Plaintiff's own team to staff the Muskogee ER. The provision of the Agreement sued upon in this case is Section 14.2 which provides that in recognition of the expenditure of resources and effort by Plaintiff in making qualified physicians available to staff the Muskogee ER, EmCare was to "pay Plaintiff the sum of $35,000 per physician if EmCare elected to directly retain, employ, or contract with any of Plaintiff's physicians during the term of the Agreement and for the period of one year following its termination." The amount of money EmCare agreed to pay Plaintiff pursuant to Section 14.2 was negotiated over several revisions of the Agreement, starting at $10,000.00 and ending with $35,000.00 as the agreed-upon amount.

The duration of the contract was to be three years, commencing on May 1, 2012, and ending on April 30, 2015. EmCare drafted the agreement with Plaintiff. The Agreement was negotiated over a period in excess of one month. Negotiating on behalf of EmCare were Sean Richardson, COO, and Barbara Fit (formerly Bogucki), corporate counsel. Negotiating on behalf of Plaintiff was Berry E. Winn, M.D., assisted by counsel. Berry E. Winn, M.D., executed the agreement on behalf of Plaintiff on April 20, 2012, and Sean Richardson executed the Agreement on behalf of EmCare on April 23, 2012.

However, in January 2013, EmCare elected to terminate the agreement. After the agreement was terminated, EmCare did not immediately provide its own physicians to staff Muskogee ER, so Plaintiff continued to perform under the terms of the agreement through March 2013. Beginning April 1, 2013, Plaintiff ceased providing staffing services to EmCare for the Muskogee ER. However, EmCare continued to use Plaintiff physicians to staff Muskogee, by directly retaining, employing, or contracting with them to do so; indeed, EmCare does not dispute that it directly retained, employed, or contracted with ten (10) of Plaintiff's physicians. Specifically, beginning in April 2013, and up until the present day, EmCare directly employed, retained, or contracted with Dr. James Campbell, Dr. Ann Campbell, Dr. Randell Chapman, Dr. Thomas DiGiovanna, Dr. Craig Kennedy, Dr. Vijay Randive, Dr. Douglas Raymer, Dr. Michael Riley, Dr. Asif Sarfraz, and Dr. H. Kuper Upchurch, Jr., to staff the Muskogee ER. Defendants do not dispute that all of these physicians were previously under contract with Plaintiff to provide emergency medical services at the Muskogee ER.

Pursuant to the Agreement, Plaintiff sent EmCare invoices in the amount of $35,000.00 for each physician that EmCare directly employed, retained, or contracted with to staff shifts at the hospital. These invoices total $350,000.00 ($35,000.00 per physician x 10 physicians = $350,000.00). These invoices have not been paid, and Plaintiff contends that EmCare is therefore in breach of the Agreement with Plaintiff. In addition, Plaintiff states that it has sustained consequential damages in the amount of $30,000.00. Defendant EmCare does not dispute this assertion with any contrary evidence or testimony.[1] (See Dkt. #68 at 6).

---

[1] Contrary to Local Rule 56.1, Defendants' "amended" response brief does not begin with a section which contains a concise statement of material facts to which Defendants assert a genuine issue of fact exists, nor do Defendants controvert Plaintiff's statement of material facts with reference to any particular evidence. (Dkt. 68). For that reason, Plaintiff's statement of material facts "shall be deemed admitted" for purposes of summary judgment. *See, e.g., Spangler v. State Farm Mut. Auto. Ins. Co.,* 2008 WL 2782708, at 1 n.1 (E.D. Okla. 2008).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. A fact is material if it is essential to the proper disposition of a claim under controlling law and an issue is genuine if the evidence is such that a rational trier of fact could resolve the issue either way. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Id.* at 322. If the movant carries its burden, the non-movant must then "set forth specific [admissible] facts," outside of the pleadings, that show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 248. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

### B. Breach of Contract

#### 1. Breach of Contract, Defined

Plaintiff has made only one claim for relief: breach of contract. The Agreement at issue in this case stipulates that Oklahoma law governs the contract. A claim for breach of contract is comprised of three elements under Oklahoma law: (1) formation of a contract; (2) breach of the

4

contract; and (3) actual damages suffered as a result of the breach. *See Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843; *see also Oltman Homes, Inc. v. Mirkes*, 2008 OK CIV APP 64, ¶ 8, 190 P.3d 1182, 1185. Oklahoma statutory law, 23 O.S. § 21 *et seq.*, governs damages arising from breach of contract. Damages arising from the breach of a contractual obligation to pay money are defined accordingly: "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon." 23 O.S. § 22. Additionally,

> [f]or the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.

23 O.S. § 21. Thus, the measure of actual damages for breach of a contract is the amount of money due under the terms of the contract, plus interest on said amount, and any other clearly ascertainable amounts proximately flowing from the breach. 23 O.S. §§ 21, 22.

## 2. The Agreement Was Formed Between Plaintiff and EmCare

Under Oklahoma law, a contract is formed when there is an offer, acceptance of the offer, exchange of valid consideration, and mutual assent. *Massey v. Matrix Service Co.*, 2013 WL 5603805, * (N.D. Okla. Oct. 11, 2013) (*citing Brewer v. City of Seminole*, 204 P.3d 87, 89 (Okla. 2009). "Mutual assent' means a 'meeting of the minds . . . on all material parts of the agreement.'" *Id.* (*quoting Watkins v. Grady County Soil and Water Conserv. Dist.*, 438 P.2d 491, 494 (Okla 1968). In this case, it is undisputed that the Agreement existed between Plaintiff and EmCare.

### 3. EmCare Breached the Agreement with Plaintiff

In Oklahoma, a contract is breached if a party to the contract intentionally fails to meet a material obligation of the contract. *See Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560 (10th Cir. 1989) In *Zenith,* the Tenth Circuit Court of Appeals affirmed a district court ruling that, under Oklahoma's materiality standard, the plaintiff was entitled to summary judgment on a breach of contract claim where defendant refused to pay invoices for standby charges. The court held that the standby charges in question were a material element of the subject contracts because the plaintiff would not have consented to the contracts without their presence in the agreements. *Id.*, at 564.

EmCare does not dispute that it directly retained, employed, or contracted with ten of Plaintiff's physicians during the period of one year following termination of the Agreement. EmCare also does not dispute that it has not tendered payment for its direct retention, employment, or contracting with Plaintiff's physicians. Therefore, the undisputed facts show that EmCare breached the Agreement with Plaintiff when it refused to tender payment for each of the physicians it directly retained, employed, or contracted with, pursuant to Section 14.2 of the Agreement with EmCare.

### 4. Plaintiff Suffered Damages as a Result of the Breach

As for the third element of breach of contract, the undisputed facts in this case demonstrate that Plaintiff has suffered actual damages as a result of EmCare's breach. The Agreement, in its final negotiated form, specifically provided that EmCare would be obligated to pay Plaintiff $35,000 per physician that it elected to retain, employ, or contract with, as compensation for the loss of Plaintiff's investment in each physician. *Id.*

Section 21 of Title 23 requires that damages be clearly ascertainable in their nature and origin. The amount of damages cannot be based on mere speculation, conjecture, or surmise alone. *See Florafax Intern. Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, 933 P.2d 282, 296 (*citing Larrance Tank Corporation v. Burrough*, 1970 OK 205, 476 P.2d 346, 350. The nature of Plaintiff's damages arising from EmCare's failure to meet its obligation to pay money is clear, as are the origin of the damages.

### a. Compensatory Damages

"[T]he detriment caused by the breach of an obligation to pay money only is deemed to be *the amount due by the terms of the obligation*, with interest thereon." 23 O.S. § 22 (emphasis added). Plaintiff has been actually damaged because EmCare breached its agreed obligation to pay money in return for electing to retain, employ, or contract with ten of Plaintiff's physicians within a year of the termination of the Agreement, causing a detriment to Plaintiff in the amount due by the terms of the obligation, which in this case, totals $350,000.00.

It is clear from the terms of Section 14.2 of the Agreement that the $35,000.00 per physician that EmCare agreed to pay Plaintiff in the event it elected to directly retain, employ, or contract with Plaintiff's physicians represents the value of the labor and services Plaintiff incurred in locating and retaining each physician. Plaintiff has demonstrated, and Defendants do not dispute, that Plaintiff typically pays recruiters a finder's fee of approximately $35,000.00 per physician that Plaintiff retains to staff an emergency room. In addition to a finder's fee, Plaintiff must pay the physician's travel and boarding expenses during the recruiting process. Following recruitment, Plaintiff must train each physician as to the computer systems and procedures in place at each hospital the physician will serve. In addition to the monetary burden incurred by Plaintiff in making physicians available to staff emergency rooms, Plaintiff also incurs a

7

substantial burden of time. The undisputed facts establish that, due to EmCare's refusal to honor Section 14.2 of the agreement, Plaintiff has suffered compensatory damages in the amount of $350,000.00.

**b.** Interest on Compensatory Damages

In addition to Plaintiff's damages arising from EmCare's breach of its obligation to pay Plaintiff, Plaintiff is also entitled to interest on the damages arising from EmCare's breach of its obligation to pay money pursuant to 23 O.S. § 22. The Agreement itself provides for an interest rate of 10% on unpaid balances due, which is also the maximum interest rate allowable under Oklahoma law. *See* Okla. Const. Art. 14, § 2. As of April 18, 2014 (the date of the filing of Plaintiff's Motion for Summary Judgment), Plaintiff has calculated interest was due in the amount of $25,876.00. Defendant has not provided any arguments disputing this amount. Accordingly, Plaintiff is entitled to interest on the amount of $25,876.00 pursuant to the Agreement between the parties. In addition, Plaintiff is entitled to additional interest accruing from April 18, 2014 through the date of the judgment rendered in this case.

c. Consequential Damages

In addition to the damages provided for specifically by the terms of the Agreement, and the interest thereon provided for by statute, Plaintiff has also claimed to have suffered consequential damages arising from EmCare's retention, employment, or contracting with each of Plaintiff's physicians. Each time EmCare elected to retain, employ, or contract with one of Plaintiff's physicians during the months following the termination of the Agreement, that physician would be unable to work shifts at another hospital at which Plaintiff contracts to provide emergency room physicians. As such, Plaintiff was denied the benefit of that physician working at another location. In some instances, Plaintiff would have to find a replacement

8

physician to cover shifts, often at unfavorable hourly rates far exceeding what Plaintiff would otherwise pay the physician retained by EmCare. Plaintiff not only lost money due to EmCare's retention, employment, or contracting with Plaintiff's physicians, but time as well. Dr. Berry Winn, M.D., and his staff were required to shift their attention from other tasks to address scheduling gaps at other hospitals caused by EmCare directly retaining, employing, or contracting with Plaintiff's physicians at the Muskogee ER. In its response brief, Emcare does not dispute the fact that Plaintiff suffered consequential damages in the amount of $30,000.00, but instead denies the fact solely on the basis of Plaintiff's alleged "prior material breach." (Dkt. #68 at 6).

In light of the foregoing, and because the Court rejects Defendants' "prior material breach" defense, *see infra*, the Court finds Plaintiff has suffered consequential damages in the amount of $30,000.00 based on the undisputed record.

### C. Defendants' Defenses

In their Response to Plaintiff's Motion (Doc. 66), rather than deny that EmCare breached the Agreement, Defendants instead advance three defenses: 1) EmCare's breach of the agreement is excused because Plaintiff previously breached the Agreement; 2) the language of Section 14.2 of the Agreement creates a fact issue as to Plaintiff's damages; and 3) Plaintiff has failed to establish alter ego liability. The Court addresses each one of these arguments, in turn.

#### 1. "Prior Material Breach" Defense

Defendants contend that they are not liable for EmCare's breach of the Agreement because Plaintiff previously breached the Agreement. Specifically, Defendants argue Dr. Berry E. Winn, M.D. failed to fulfill certain conditions of a separate "Medical Director Agreement" he entered into with Oklahoma EM-I Medical Services, P.C., and failed to assist EmCare with

9

fulfilling EmCare's obligations under another separate "Services Agreement" between EmCare, Inc., and the owners of Muskogee Regional Medical Center.

The Court rejects Defendants' arguments. The defense of "excused performance" resulting from a party's prior material breach is an affirmative defense and, as such, it must be pled or its assertion is waived. *See Shelter Mortgage Corp. v. Castle Mortg. Co., LC,* 117 Fed.Appx. 6, 11 (10th Cir. 2004). Defendants' Answer does not contain this defense. (Doc. 14). The Scheduling Order of the Court, entered November 7, 2013, set a deadline for amendment of pleadings of December 9, 2013. (Doc. 25). On March 17, 2014, (i.e., three months out of time), Defendants filed a Motion for Leave to Amend to Answer to Add Affirmative Defenses and to Assert Counterclaim, including a defense of "breach of a material condition." (Doc. 33). Defendants claimed they had just discovered within their own documents, which had been in the possession of Defendants since the filing of this lawsuit, information supporting the affirmative defenses. However, on April 17, 2014, this Court entered an Order denying Defendants leave to amend their answer to add a counterclaim and assert these additional affirmative defenses. (Doc. 46). Thus, Defendants'contention that EmCare's performance under the Agreement is excused based on Plaintiff's prior material breaches of the agreement is one that is not properly before the Court, and as such, does not serve to excuse EmCare from liability for its breach of the Agreement.

The Court also finds that EmCare waived its right to rely on this defense. In *Shelter Mortgage Corp., supra*, the Court rejected a "prior material breach" defense finding that it had been waived because the appellant never gave notice to the appellee of the alleged breach. *Id.* at 12. The same is true in this case, as it is undisputed the defense was never brought to the attention of Plaintiff prior to the instant litigation. To the contrary, the undisputed facts show

that Dr. Berry E. Winn, M.D., continued to work as a physician at Muskogee for months after EmCare terminated the contract on March 31, 2013.

Even had Defendants timely raised the affirmative defense that EmCare's performance was excused by Plaintiff's "prior material breaches," Defendants' affirmative defense is still insufficient to excuse EmCare's breach of the Agreement. The "prior material breach" doctrine upon which Defendants rely applies when a contract contemplates an <u>exchange of performances</u> between the parties, and holds that one party's failure to perform allows the other party to cease its own performance. *See* RESTATEMENT (SECOND) OF CONTRACTS §237. A duty under the contract, such as that contained in Section 14.2, is unaffected if it was not one to render a performance in connection with the duty that was allegedly breached. See RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. e (1981) ("Duties affected. . . . A duty under a separate contract is not affected, nor is a duty under the same contract affected if it was not one to render a performance to be exchanged under an exchange of promises. Further, only duties to render performance are affected.").

The undisputed evidence in this case shows the Agreement was terminated by EmCare pursuant to Section XVII of the Agreement. The undisputed record also illustrates that the provisions of Section XIV of the Agreement, including Section 14.2, survive termination of the Agreement. Thus, EmCare's right to terminate the Agreement was independent of the obligations imposed on EmCare by Section 14.2 of the Agreement. Therefore, EmCare was independently obligated to comply with Section 14.2 of the Agreement irrespective of EmCare's termination of the Agreement. EmCare's contractual duty to Plaintiff was unaffected by

Defendants' after-the-fact allegation that Plaintiff (and Dr. Winn) failed to perform under the contract.[2]

Accordingly, because EmCare's "prior material breach" defense is without merit, Plaintiff is entitled to summary judgment on its claim of breach of contract against EmCare Physician Providers, Inc.

### 2. The Language of Section 14.2 is Not Ambiguous

Defendants have argued that the language of Section 14.2 of the Agreement creates a fact issue as to Plaintiff's damages. The language of Section 14.2 of the Agreement is as follows:

> Company [EmCare] recognized that Group [Winn & Associates] expends substantial resources and efforts to make qualified physicians available to serve as Group Physicians. Therefore, during the Term of this Agreement and twelve (12) months after the termination or expiration of this Agreement, Company agrees to pay Group Thirty-Five Dollars ($35,000) [*sic*] per Group Physician, contracted or employed with Group, if Company elects to retain, employ or contract with the Group Physician directly. The amount and terms of payment shall be set forth in a document of waiver.

Defendants' argument regarding the language of Section 14.2 is two-fold. Defendants first claim that, because the text of the Agreement, as executed by the parties, reads, "Company agrees to pay Group Thirty-Five Dollars ($35,000) [*sic*] per Group Physician, contracted or employed with Group, if Company elects to retain, employ or contract with the Group Physician directly[,]" a question of fact exists as to whether it was the intent of the parties for EmCare to pay Plaintiff $35.00 or $35,000.00.

Defendants' argument is not compelling. First, Defendant's source of authority for arguing that EmCare only owes Plaintiff $35.00 per physician is U.C.C. § 3-114, which

---

[2] The Court also rejects EmCare's reliance on the separate contract between Dr. Berry E. Winn, M.D., and Oklahoma EM-I Medical Services, P.C., as any alleged failure of Dr. Winn to perform under that contract has no bearing on the contract at issue in the present case, or on EmCare's obligation to comply with Section 14.2.

provides, among other things, that "words prevail over numbers." However, U.C.C. § 3-114 clearly addresses contradictory terms only in the context of a negotiable instrument. The Agreement that is before the Court is not a negotiable instrument.

Second, EmCare asks the Court to entertain the possibility that $35.00 was the amount agreed upon, not $35,000.00, but EmCare has provided the Court with no evidence supporting this contention. In particular, Plaintiff's Motion for Summary Judgment states that $35,000.00 was the "agreed-upon" amount for purposes of Section 14.2 of the Agreement. In their response brief, Defendants state that they "dispute" this fact, but cite no evidence to support such a dispute, and provide no evidence or testimony in support of the argument that EmCare believed the amount to be $35.00 instead of $35,000.00. For that reason, the Court finds no genuine dispute as to any material fact regarding this issue.

Third, it is clear that the omission of the word "thousand" from the clause qualifies as a typographical error. The doctrine of scrivener's error, which governs the analysis where typographical errors occurs, provides that "the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is 'clear, precise, convincing and of the most satisfactory character' that a mistake has occurred and that the mistake does not reflect the intent of the parties." *SpiritBank v. McCarty*, 2009 WL 3526652, *4 (N.D. Okla. Oct. 23, 2009) (*citing Int'l Union of Electronic, Elec., Salaried, Machine and Furniture Workers v. Murata Erie North America, Inc.*¸ 980 F.2d 889, 907 (3d Cir. 1992)). Further, "[r]eformation is a contract remedy available to conform a written contract to the parties' antecedent agreement when that written contract differs from the antecedent expressions on which the parties based their agreement." *Id.* (*citing Oklahoma Oncology U.S. Oncology, Inc.*, 2007 OK 12, 160 P.3d 936, 947 n.2).

Plaintiff has provided various drafts of the Agreement produced during negotiations. It is clear from a reading of the previous drafts that the amount contemplated by the parties was $35,000.00, and not $35.00. For instance, previous drafts of the Agreement provided the amount to be paid by EmCare was $10,000.00; the parties eventually agreed upon the $35,000.00 amount. The omission of the word "thousand" from the recitation in Section 14.2 of the final draft of the Agreement is a typographical error that can be corrected through the Court's equitable powers. "Equity will correct errors in an instrument shown to have resulted from an unintentional drafting mistake." *See Davenport v. Beck*, 1977 OK CIV APP 40, 576 P.2d 1199, 1203.[3]

The Court also rejects Defendants' remaining contention, i.e., that Section 14.2 is "ambiguous" because it contains the following sentence: "The amount and terms of payment shall be set forth in a document of waiver." Defendants have argued that this clause creates an ambiguity because it represents an agreement to "further negotiate" the total amount due under Section 14.2. The Court disagrees, finding that the obligations imposed by Section 14.2 are clear and unambiguous. A plain language reading of this clause indicates that the amount and terms of payment pursuant to Section 14.2 shall be set forth in a future document. However, there is nothing in the clause itself, Section 14.2, or the Agreement as a whole that suggests that the amount provided for in Section 14.2 is open to further negotiation. Rather, the clause simply

---

[3] The Court's conclusion in this regard is confirmed by review of EmCare, Inc.'s Services Agreement with Muskogee Regional Medical Center, which was attached to EmCare's response brief. Section 12 of this Services Agreement contains a provision that is very similar to Section 14.2 found in the subject Agreement. It is structured somewhat differently, in that it initially prohibits retention of EmCare's providers by Muskogee entirely, but it permits EmCare to "waive" that prohibition in return for either $75,000, or 30% of the physician's annual compensation, whichever is less.

provides that the amount due under Section 14.2 will be set forth in a future document, not that the amount will be further negotiated.[4]

The Court finds the parties to the Agreement agreed that in the event EmCare directly retained, employed, or contracted with Plaintiff's physicians, EmCare would pay Plaintiff $35,000.00 per physician so retained. The Court also finds that the amount agreed upon was not subject to further negotiation between the parties.

### 3. Plaintiff Has Established Alter Ego Liability

Although Plaintiff has made only one substantive claim for relief, Plaintiff seeks to impute liability for a contract breached by Defendant EmCare Physician Providers, Inc., to other named Defendants EmCare Physician Services, Inc., EmCare, Inc., EmCare Holdings, Inc., and Envision Healthcare Holdings, Inc. In their reply in support of their motion for summary judgment (Doc. 71), Plaintiff acknowledges that EmCare Physician Services, Inc., is a sister company of EmCare Physician Providers, Inc., and has dropped its alter ego claim against that Defendant.

However, as to the remaining named Defendants against which Plaintiff seeks to establish alter ego liability, this Court finds that EmCare Physician Providers, Inc., is the alter ego of Defendants EmCare, Inc., EmCare Holdings, Inc., and Envision Healthcare Holdings, Inc., and that those named Defendants should be held liable for Defendant EmCare Physician Providers, Inc.'s breach of the Agreement.

The standards for this theory of liability are well-settled in Oklahoma:

> One corporation may be held liable for the acts of another under the theory of alter-ego liability if (1) the separate existence is a design or scheme to perpetuate

---

[4] Additionally, the undisputed evidence shows that Plaintiff, in a series of invoices sent to EmCare, set forth the amount due to Plaintiff pursuant to Section 14.2, as well as the desired terms of payment.

a fraud *or* (2) one corporation is merely an instrumentality or agent of the other." *Gilbert v. Sec. Fin. Corp. of Okla.,* 152 P.3d 165, 175, 2006 OK 58, ¶¶ 22–23 (citing *Gibson Prod. Co., Inc. of Tulsa v. Murphy,* 100 P.2d 453, 458, 1940 OK 100, ¶ 36) (emphasis supplied). Oklahoma law also includes a list of nine factors that courts may consider when determining whether to hold one corporation liable for the acts of another corporation—the factors "hinge primarily on control." *Id.* at 175, 2006 OK 58, ¶ 23 (citing *Oliver v. Farmers Ins. Group of Cos.,* 941 P.2d 985, 987, 1997 OK 71, ¶ 8). As seen *supra,* Oklahoma law is stated in the disjunctive, requiring *either* a showing of fraud or that one corporation is merely the instrumentality of another.

*Canal Ins. Co. v. Montello, Inc.*, 822 F.Supp.2d 1177, 1181-82 (N.D. Okla. 2011). The factors that the Court may consider to determine whether to hold one corporation liable for the acts of another are:

> (1) the parent corporation owns most or all of the stock; (2) the corporations have common officers or directors; (3) the parent provides financing to the subsidiary; (4) the dominant corporation subscribes to all the other's stock; (5) the subordinate corporation is under capitalized; (6) the parent pays the salaries, expenses or losses of the subsidiary; (7) a great deal of business is with parent corporation or assets of the former were conveyed to the other corporation; (8) the parent refers to the subsidiary as a division or department; (9) the subsidiary follows directions from the parent's officers or directors; (10) legal formalities for keeping the entities separate are observed.

*Oliver v. Farmers Ins. Group of Companies*, 1997 OK 71, ¶8, 941 P.2d 985, 987 (*citing Frazier v. Bryan Memorial Hosp. Authority*, 1989 OK 73, 775 P.2d 281, 288). All of these factors need not be present for a court to determine that one entity is the alter ego of another. *See Lowell Staats Min. Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1263 (10th Cir. 1989).

Here, Plaintiff has submitted evidence demonstrating that EmCare Physician Providers, Inc., is the alter ego of EmCare, Inc., EmCare Holdings, Inc., and Envision Healthcare Holdings, Inc. Plaintiff has established that Envision Healthcare Holdings, Inc., through several wholly-owned intermediate subsidiaries, owns all of the stock of EmCare Holdings, Inc., and that EmCare Holdings, Inc. owns all of the stock of EmCare, Inc., and that EmCare, Inc. owns all of

the stock of EmCare Physician Providers, Inc. Plaintiff has thereby satisfied the first *Frazier* factor.

Plaintiff has also established commonality of officers and directors, satisfying the second *Frazier* factor. William Sanger is a member of the Board of Directors of Envision Healthcare Holdings, Inc., as well as its President and Chief Executive Officer. He is also the sole member of the Board of Directors of EmCare, Inc., and he is the sole member of the Board of Directors for EmCare Physician Providers, Inc. Todd Zimmerman is the President of Defendant EmCare Physician Providers, Inc. Todd Zimmerman is also the Executive Vice President of Defendant Envision Healthcare Holdings, Inc.. Additionally, he is the President and Chief Executive Officer of Defendant EmCare, Inc. Craig Wilson is the Secretary of Defendant EmCare Physician Providers, Inc. Craig Wilson is also the Senior Vice President, General Counsel, and Secretary for Defendant Envision Healthcare Holdings, Inc. Steve Ratton is the Treasurer of EmCare Physician Providers, Inc. Steve Ratton is also the Executive Vice President, Chief Strategy Officer, and Treasurer of Defendant Envision Healthcare Holdings, Inc. Moreover, EmCare Physician Providers, Inc. not only shares officers and directors with its parent companies, it also shares office space – they are all located at 6200 S. Syracuse Way, Suite 200, Greenwood Village, Colorado 80111.

The most compelling piece of evidence supporting a finding of alter ego liability in this case, however, lies in the nature of the negotiation and execution of the Agreement that is the subject of this lawsuit. It is undisputed that no employees of EmCare Physician Providers, Inc. participated in the negotiation and execution of the Agreement. Instead, employees of Envision Healthcare participated in the negotiation, drafting, and execution of the Agreement. Indeed,

Sean Richardson, an employee of Envision Healthcare,[5] executed the Agreement on behalf of EmCare Physician Providers, Inc. Plaintiffs have thereby demonstrated the ninth *Frazier* factor – that EmCare Physician Providers, Inc. operates at the direction of its corporate parents.

Plaintiff has also demonstrated the presence of the seventh *Frazier* factor, in that EmCare Physician Providers, Inc., is engaged in the same business as its parents. EmCare Physician Providers, Inc., EmCare, Inc., EmCare Holdings, Inc., and Envision Healthcare Holdings, Inc. are all ultimately engaged in the business of providing out-sourced medical services. As referenced *supra*, Defendants have called to the attention of the Court the Services Agreement between EmCare, Inc. and Muskogee Regional Medical Center, which Defendants contend is related to the Professional Practitioner Services Agreement between EmCare Physician Providers, Inc. In the Services Agreement, EmCare, Inc. agreed to provide physician staffing services to the Hospital. It is clear from the Professional Practitioner Services Agreement that EmCare, Inc. intended to fulfill this obligation to the Hospital through the use of its subsidiary, EmCare Physician Providers, Inc. Though EmCare Physician Providers, Inc. satisfied the discrete function of contracting with Plaintiff so that its parent could meet its obligations under a different contract, it is clear that both entities are engaged in the same business. Indeed, in the instant case, EmCare Physician Providers, Inc. and EmCare, Inc. are engaged in the very same business arrangement.

All of the foregoing also goes to the tenth *Frazier* factor – that Defendants have not observed corporate formalities for keeping the entities separate. It is clear that, at the very least, for the purposes of the Professional Practitioner Services Agreement, the distinctions between EmCare Physician Providers, Inc. (the contracting party) and its corporate parents were blurred

---

[5] During the negotiation of the Agreement, Sean Richardson's electronic signature purported him to be the Chief Operation Officer of the West Division of Defendant EmCare, Inc.

to the extent that it is clear that EmCare Physician Providers, Inc., was merely the instrument of its corporate parents.

For all of these reasons, the Court finds that EmCare Physician Providers, Inc., is the alter ego of EmCare, Inc., EmCare Holdings, Inc., and Envision Healthcare Holdings, Inc., and as a result, each one is jointly and severally liable for EmCare Physician Providers, Inc.,'s breach of the Professional Practitioner Services Agreement as if each were a named party to the contract.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Winn & Associates, PLLC's Motion for Summary Judgment (Doc. 55) is HEREBY GRANTED as to Defendants EmCare Physician Providers, Inc., EmCare, Inc., EmCare Holdings, Inc., and Envision Healthcare Holdings, Inc., and Plaintiff is awarded damages against said Defendants, jointly and severally, in the amount of $350,000.00, plus interest thereon in the amount of $25,876.00 as accrued through April 18, 2014, any additional interest accruing from April 18, 2014 up until the date of this Order and Opinion, as well as consequential damages in the amount of $30,000.00.

IT IS FURTHER ORDERED, that Defendant EmCare Physician Services, Inc., is hereby dismissed without prejudice as a Defendant in this case.

The Court reserves the issue of Plaintiff's entitlement to attorney fees and costs until such time as an application for payment of attorney fees and costs is made.

**IT IS SO ORDERED this 21st day of July, 2014**.

James H. Payne
United States District Judge
Eastern District of Oklahoma